THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES WILDER, Defendant-Appellee.

Fourth District   No. 4—86—0828

Opinion filed June 2, 1987.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and James W. Ackerman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:
On September 12, 1986, defendant was charged by citation and complaint with driving under the influence of alcohol and driving while his license was revoked. (Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501(a), 6—303.) On the same date, the arresting officer, Vermilion County Deputy Sergeant Donald M. Hackler, signed a sworn report of notice of summary suspension stating that defendant submitted to testing which disclosed an alcohol concentration of .25. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1.) On September 18, 1986, defendant completed and filed with the circuit court a form petition to rescind the statutory summary suspension of his driver's license. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1.) After hearing and the submission of briefs, the trial court found that affidavits submitted by the State as an exhibit failed to prove proper testing of the breathalyzer equipment and allowed the petition to rescind the statutory summary suspension of defendant's driver's license. The State appeals. We reverse and remand.

The form petition filed by defendant pursuant to section 2—118.1 of the Illinois Vehicle Code (Code) was based on the issues enumerated in section 2—118.1(b), including whether he had submitted to and completed a chemical test which determined an alcohol concentration of 0.10 or more (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b)(4)). Confirmation of the statutory summary suspension of defendant's driver's license was filed with the circuit court on September 29, 1986, and the docket sheet shows a copy was sent to the defendant and the Secretary of State.

In October 1986, the case was called for hearing on defendant's petition to rescind the statutory summary suspension. At the hearing, the parties proceeded as if the State had the burden of proof, and defendant offered no evidence.

■ It has been held that the burden of proof on a petition to rescind statutory summary suspension of a driver's license is on the defendant as petitioner. (*People v. Blythe* (1987), 153 Ill. App. 3d 292, 505 N.E.2d 402, *appeal denied* (1987), 115 Ill. 2d 544; *People v. Griffith* (1987), 153 Ill. App. 3d 856, 861, citing *cf. Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 729-30, 498 N.E.2d 295, 300 (similarly

construing section 2—118 of the Code); *People v. Nunn* (1987), 156 Ill. App. 3d 604.) As implied-consent hearings are not inextricably tied to the underlying criminal offense of DUI (*Koss v. Slater* (1987), 116 Ill. 2d 389, 394), so proceedings on a defendant's petition to rescind a summary suspension under section 2—118.1 are separate from the underlying criminal offense of DUI (*People v. Blythe* (1987), 153 Ill. App. 3d 292, 505 N.E.2d 402, *appeal denied* (1987), 115 Ill. 2d 544). Inasmuch as the burden of proof under section 2—118.1 lies with the defendant as petitioner, we reverse the order of the circuit court of Vermilion County and remand the cause.

The facts may be briefly stated. The State called Vermilion County Sheriff's Deputy Sergeant Donald M. Hackler and Deputy Sheriff Rick Allen Barnes to the stand as the officers who stopped the defendant's car at about 3:25 a.m. on September 12, 1986, spoke with and observed defendant, and administered a field-sobriety test to him. Both officers testified that defendant smelled of alcohol and was unsteady on his feet. Officer Hackler testified that defendant failed the balance test administered as a field-sobriety test. Hackler arrested defendant for DUI and took him to the Public Safety Building, Danville, Illinois. Hackler identified the official police report he completed in this case. Officer Barnes testified that when defendant exited the car, he was unsure on his feet, his speech was somewhat slurred, and he seemed excited. Barnes corroborated Hackler's testimony that defendant failed the field-sobriety test.

The State also called Officer Keith J. Ongman, who testified that he had administered the breath test to defendant at the Public Safety Building on September 12, 1986, at about 3:57 a.m. Ongman testified that the machine used to perform the test was an Intoxilizer, an authorized breath-testing device in Illinois, and that it was authorized on September 12, 1986. Ongman further testified that on that date, he was certified by the Department of Public Health to perform the breathalyzer test and that the machine used to perform the test had been calibrated and certified to be accurate not more than 30 days before the time he used it to test the lung-air samples of defendant. Defendant objected to Ongman's testimony on the calibration and certification of the machine 30 days before its use, based on lack of foundation to show the witness was competent to answer the question. The court overruled the objection, but agreed to withhold final judgment until authorities could be submitted to it within seven days. Ongman further testified that the machine used to test the defendant had been calibrated and certified to be accurate not more than 30 days after the time he used it to test the lung-air samples of defend-

ant. Defendant's objection to the latter question was noted by the court. Ongman identified the defendant's breath-test result slip and testified that the breath test showed defendant had a .25 blood-alcohol concentration. On cross-examination, Ongman acknowledged he was not present when the Intoxilizer machine was certified and calibrated before or after this breath test was administered. Asked what date it had been certified and calibrated and who certified and calibrated it, Ongman testified that he did not know because he did not have the official record book with him.

The State tendered People's exhibit No. 3 into evidence, certified copies of the calibration of the Intoxilizer providing it had been calibrated to be accurate within 30 days before and 30 days after defendant submitted to the intoxilizer test. The State offered People's exhibit No. 1, Hackler's police report, and People's exhibit No. 2, the breath-test slip. The court admitted the exhibits, but stated it was withholding its final decision until the parties submitted briefs.

After reviewing the briefs, the court found the affidavits submitted by the State as People's exhibit No. 3, pertaining to the calibration accuracy of the Intoxilizer on August 22, 1986, and September 30, 1986, inadmissible and found the State had failed to prove proper testing of the breathalyzer. The court therefore allowed defendant's petition to rescind the statutory summary suspension of his driver's license.

■ Section 11—501.2(a) requires that chemical tests be performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a).) The administrative standard for examining and certifying instruments reads in pertinent part:

"a) An instrument must be accurate within ± 0.01% W/V to be certified. To determine accuracy of instruments, an inspector shall perform two (2) analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days. The inspector shall record test results of his certification in the instrument log book. The original certification test results will be retained by the inspector.

b) Breath analysis instruments used shall be examined and certified by an inspector:

1) Prior to being placed in operation.

2) After being repaired or recalibrated.

c) All agencies are to have their breath analysis instrument and log book available for examination by an inspector." (77 Ill. Adm. Code 510.100 (1985).)

Defendant's brief below argued that People's exhibit No. 3 was in fact affidavits which ought not properly be considered, citing R. Hunter, Trial Handbook for Illinois Lawyers sec. 64.11 (5th ed. 1983). We conclude upon review of the record that section 2—118.1 places the burden with respect to the foundational issue of the trustworthiness of the breathalyzer test results on the defendant as petitioner, rather than the State. See, *e.g., Fisk v. Department of Motor Vehicles* (1981), 127 Cal. App. 3d 72, 77, 179 Cal. Rptr. 379, 382, 31 A.L.R.4th 905, 910; see also Annot., *Admissibility in State Court Proceedings Of Police Reports Under Official Record Exception To Hearsay Rule,* 31 A.L.R.4th 913 (1984 & 1986 Supp.); Annot., *Admissibility, Under Public Records Exception To Hearsay Rule, Of Record Kept By Public Official Without Express Statutory Direction Or Authorization,* 80 A.L.R.3d 414 (1977 & 1986 Supp.); M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 803.12, at 580-83 (4th ed. 1984). Contra, *People v. Orth* (1987), 154 Ill. App. 3d 144, 148, *appeal denied* (1987), 115 Ill. 2d 547.

Reversed and remanded.

GREEN and KNECHT, JJ., concur.