THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH GRYCZKOWSKI, Defendant-Appellant.

Second District No. 2—88—0674

Opinion filed June 9, 1989.

Christopher Cronson, of Oak Park, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Joseph Gryczkowski, appeals from the judgment of the circuit court of Du Page County which denied his petition for rescission of the summary suspension of his driving privileges, pursuant to section 2—118.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat.

1987, ch. 95½, par. 2—118.1). Defendant contends that the trial court erred in failing to consider evidence that his blood-alcohol content was not .10 at the time he was arrested. He further contends that the trial court erred in finding that he failed to sustain his burden of proof in that the testimony of the arresting officer failed to confirm the validity of the breathalyzer certification and failed to establish the police department's compliance with the Department of Public Health's testing procedures. We disagree and affirm the judgment of the trial court.

Defendant was arrested in the early morning hours of March 6, 1988, by a Naperville police officer and charged with driving under the influence of alcohol in violation of a local ordinance. At the time of the arrest, defendant voluntarily performed various field-sobriety tests. Defendant failed the tests and was subsequently taken to the police station, where he voluntarily submitted to a breathalyzer test. His test result registered in excess of .10. On the basis of this test result, the arresting officer prepared a law enforcement sworn report and served notice upon defendant of the summary suspension of his driving privileges pursuant to section 11—501.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). Defendant timely requested a summary suspension hearing, at which he presented his own testimony and that of an expert witness; the State presented the testimony of the arresting officer. The following facts were adduced at the hearing.

Officer Reavy of the Naperville police department testified that he was on routine patrol in the area of Washington and Sycamore Streets in Naperville when he observed defendant's vehicle traveling northbound in the far right-hand lane of Sycamore. Officer Reavy observed defendant's vehicle cross into the adjacent lane over the broken yellow lane divider. He pulled defendant's vehicle over approximately five blocks later and met defendant between the cars. Officer Reavy observed that defendant had "somewhat unstable balance" and had the odor of alcohol on his breath and clothing. Defendant indicated that he had just come from a bar down the street where he had drunk four mixed drinks containing alcohol. Officer Reavy asked defendant to perform a series of sobriety tests, including the one-leg stand and the walk-and-turn test. Officer Reavy testified that defendant was unable to complete the tests satisfactorily and, consequently, defendant was placed under arrest for improper lane usage and driving while under the influence of alcohol.

Officer Reavy transported defendant to the Naperville police department and read him the warning to motorists at approximately

2:09 a.m. Officer Reavy testified that he observed defendant for 20 minutes, after which another officer gave defendant a breathalyzer test. Officer Reavy stated that he was not the breathalyzer operator and did not have direct personal knowledge of the machine's certification date. In addition, Officer Reavy did not bring the log book pertaining to the machine in question with him to the hearing. Officer Reavy was unable to testify as to the proper procedures for performing a breathalyzer test and could not describe departmental regulations pertaining to the administration of such tests. Other than having observed defendant perform the test, he had no direct knowledge of the manner in which the test was administered.

Defendant testified at the hearing that, at approximately midnight, he and a friend went out for a drink at the Two Rivers Pub south of Naperville. He stated that he had not had anything to drink prior to arriving at the pub, but drank four mixed drinks consisting of Wild Turkey whiskey and Coke between midnight and 1:30 a.m. At approximately 1:30 a.m., he and his friend left the bar. Approximately five minutes later, defendant was stopped by the arresting officer, submitted to the field-sobriety tests, which he claimed to have performed satisfactorily, and was transported to the police department. Defendant stated that he was seated in a holding area for a long period of time and was not observed by any police officers. He further testified that he did not eat, smoke, regurgitate or vomit while in the holding area. He stated that he was given a warning regarding the breathalyzer test and voluntarily submitted to such a test. On the second attempt, he registered a result in excess of .10.

Defendant also offered the testimony of Nives Friedman, a former food chemist for the State of Illinois, for the purpose of rendering an opinion as to defendant's blood-alcohol content at the time Officer Reavy stopped him. The court allowed Ms. Friedman's testimony over the objection of the State. Ms. Friedman testified as to her education, experience, and expertise in the areas of blood- and breath-alcohol content and their measurement by breathalyzer machines. She offered her opinion that, based upon information given to her by the defendant's attorney, defendant's blood-alcohol content at the time he was arrested would have been between .04 and .06.

In closing, defendant argued that, based upon the lack of evidence indicating the breathalyzer machine to have been properly certified and a similar lack of evidence establishing the police department's compliance with the Department of Public Health's standards in the administration of his breathalyzer test, his test was not accurate. He further argued that his blood-alcohol content was not in excess of .10

at the time he was arrested and thus requested the court to rescind the statutory summary suspension of his driving privileges. The court noted that much of the evidence presented in the rescission hearing would have been extremely relevant in a trial on the charge of driving under the influence of alcohol; however, it found defendant had failed to sustain his burden of proof and denied the petition to rescind.

Defendant filed a motion to reconsider the court's judgment and presented argument at a hearing on June 27, 1988. Counsel for defendant summarized the issues raised at the initial rescission hearing as follows: (1) whether, at the time defendant was driving, his blood-alcohol content was .10 or greater; (2) whether the breathalyzer machine used to administer defendant's test was properly certified; and (3) whether the Naperville police department complied with the Department of Public Health's regulations while administering defendant's breathalyzer test. Defendant argued that his blood-alcohol content at the time he was driving was relevant under the "statutory scheme" contained in sections 11—501 and 11—501.2 of the Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501, 11—501.2). He further argued that, as there had been no showing that the breathalyzer machine was properly certified, and the arresting officer was unable to indicate whether the Department of Public Health's regulations had been followed, defendant had established that the breathalyzer test was invalid. The court denied defendant's motion to reconsider, and his timely appeal ensued.

Defendant raises two issues on appeal: (1) whether a defendant's blood-alcohol content at the time he is arrested is relevant in a hearing on the rescission of his summary suspension of his driving privileges; and (2) whether the defendant in the instant case sustained his burden of proof in establishing the invalidity of his breathalyzer test result.

■ Defendant's initial contention lacks a basis in law, as evidence of a defendant's blood-alcohol content at the time of an arrest is clearly not required by the statutory language of the summary suspension provision contained in section 11—501.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1) and the summary suspension hearing provision set forth in section 2—118.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1). Thus, we conclude that the trial court correctly rejected the defendant's offer of proof on this issue.

In support of his position, defendant relies exclusively upon *People v. Hamilton* (1987), 118 Ill. 2d 153, claiming that *Hamilton* stands for the proposition that a petitioner can raise issues not enumerated in section 2—118.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 2—

118.1). In *Hamilton*, the trial court struck down this section as unconstitutional on the basis that it improperly limited the scope of issues to be considered in a statutory summary suspension hearing. The supreme court reversed, holding that the trial court's interpretation of the section was overly rigid and restrictive. Section 2—118.1(b) provides in pertinent part:

"The scope of the hearing shall be limited to the issues of:

\* \* \*

4. Whether \* \* \* such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b)).)

The trial court had interpreted subsection 4 as limiting the defendant's inquiry to a yes or no question. The supreme court, on the other hand, read this section in the context of sections 11—501.1 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1) (the implied consent and summary suspension provision) and 11—501.2 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2) (section which defines the types and requirements of chemical tests used to measure blood-alcohol content). The supreme court concluded that a defendant's inquiry into the validity of the test result was implicit within the statutory scheme, stating:

"By its explicit language, section 11—501.1 provides that implied consent to the chemical tests, upon which grounds for summary suspension are predicated, is subject to section 11—501.2, which specifically provides that the tests must comply with certain requirements. For purposes of this case, the issue then becomes whether a licensee seeking rescission of summary suspension may raise the issue of noncompliance at a rescission hearing. We answer that question in the affirmative.

\*\*\*

\*\*\*[Since] compliance with section 11—501.2 is mandatory for summary suspension purposes, noncompliance will render test results invalid and inadmissible. That being so, it follows inescapably that a licensee must be permitted to contest the admission of allegedly invalid test results at a rescission of summary suspension hearing." *Hamilton*, 118 Ill. 2d at 160.

■ It is thus indisputable that the instant defendant had the right to challenge the accuracy of his breathalyzer test result. However, the *Hamilton* holding in no way supports defendant's novel theory that the actual level of his blood-alcohol content at the time he was arrested is somehow relevant to the summary suspension of his driving privileges. Section 11—501.1(d) plainly states, "If the person \* \* \* submits to a test which discloses an alcohol concentration of 0.10

or more, the law enforcement officer shall immediately submit a sworn report to *** the Secretary of State." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(d).) Section 11—501.1(e) requires the Secretary of State to suspend such a person's driving privileges upon the receipt of the law enforcement officer's sworn report. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(e).) The plain language of these statutory provisions compels the conclusion that the relevant time of blood-alcohol content is the time at which the subject is tested. Defendant has offered no statutory citations or references to legislative history in support of his theory that the State must establish that a defendant's blood-alcohol content is .10 at the time of arrest in order to support a statutory summary suspension of driving privileges. Consequently, we reject this contention and affirm the trial court's judgment that a defendant's blood-alcohol content at the time he is operating his vehicle is not an issue in a statutory summary suspension proceeding pursuant to section 2—118.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1).

 The sole issue remaining is whether the trial court's order continuing defendant's summary suspension was against the manifest weight of the evidence. As a general proposition, a motorist challenging the summary suspension of his driving privileges bears the burden of establishing a *prima facie* case for rescission. (*People v. Orth* (1988), 124 Ill. 2d 326, 340.) Elements of such a *prima facie* case include whether the breathalyzer test was properly administered and whether the result obtained was accurate. (*People v. Davis* (1989), 180 Ill. App. 3d 749, 752, citing *Orth*, 124 Ill. 2d at 336-38; *People v. Torres* (1987), 160 Ill. App. 3d 643, 647.) The burden of challenging the trustworthiness of the breathalyzer test results lies squarely on the defendant as the petitioner in a summary suspension hearing. (See *People v. Martin* (1987), 161 Ill. App. 3d 472, 475 (the defendant challenged the reliability of a blood test); see also *People v. Wilder* (1987), 156 Ill. App. 3d 663, 667.) The trial court's determination of whether a defendant has met his burden of proof will be overturned only if that determination is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341; *People v. Sanders* (1988), 176 Ill. App. 3d 467, 469; *Torres*, 160 Ill. App. 3d at 646.

█ At the summary suspension hearing, defendant failed to introduce any evidence whatsoever that he was improperly tested. He also failed to introduce any evidence that the machine in question malfunctioned, or that the results obtained were inaccurate. Such evidence is indispensable for defendant to meet his burden in establishing a *prima facie* case for rescission. (*Davis*, 180 Ill. App. 3d at 752; see

also *Orth,* 124 Ill. 2d at 336-38; *Torres,* 160 Ill. App. 3d at 647.) Defense counsel's claims that the breathalyzer machine in question lacked a proper certification and that the police department failed to follow proper procedures were not established at the hearing and are totally unsupported by the evidence. If defendant and his counsel had wished to rely upon these claims, they should have introduced evidence to support them, such as the police department log book containing certification dates for breathalyzer machines and the testimony of the breathalyzer operator. Defense counsel's statements at the initial rescission hearing on April 11, 1988, demonstrates that he failed to understand the placement of the burden of proof in such hearings:

> "Well, Judge, obviously one of the things *the State has to prove in these hearings* is at the time that the person was either driving or in actual physical control of the vehicle that [his] blood alcohol content was in excess of .10. That's set forth in the statute, Judge." (Emphasis added.)

As stated above, the burden of proof rests on the defendant; the State has the task of rebutting the defendant's evidence. In the instant case, defendant failed to produce any evidence whatsoever to support his claims. It is not the State's responsibility to produce witnesses or evidence to support defendant's challenge of the accuracy of a breathalyzer test result.

In view of the foregoing, we affirm the trial court's judgment in continuing the statutory summary suspension of defendant's driving privileges.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and LINDBERG, J., concur.